## THOMAS v. SPENCER.

(Circuit Court, M. D. Pennsylvania. May 26, 1903.)

### No. 1.

1. PATENTS—INFRINGEMENT—SLATE PICKERS.

The Thomas patents, Nos. 379,253 and 494,395, for slate pickers for separating slate from coal, as to each claim thereof cover combinations of elements many of which are old, and neither one of the several claims is infringed by a machine which does not employ all the elements of such claim. Such claims construed, and *held* not infringed.

In Equity. Suit for infringement of letters patent No. 379,253, issued March 13, 1888, and No. 494,395, issued March 28, 1893, each for a slate picker, and granted to Septimus Thomas. On final hearing.

S. B. Price, for plaintiff.
C. L. Hawley, for defendants.

ARCHBALD, District Judge.   The two patents in suit were issued to Septimus Thomas in 1888 and 1893, respectively, and are each for what is known as a "slate picker," a device for mechanically separating and removing slate and other impurities from coal.   The general principle made use of is the greater weight, and consequently slower motion, of the slate as it passes along with the coal down and over certain chutes or planes of different materials differently inclined, which are so constructed and arranged that the slate is induced to drop into an opening near the end, while the coal leaps over it and goes on.   There is nothing particularly new in this, the same idea having been similarly made use of in several preceding structures, including two patented to the same inventor, one in 1875 and the other in 1878.   The present patents depend for their novelty and validity, therefore, not on individual features already previously used, but on the particular combination of them devised by the inventor to produce the result in mind.   The alleged infringement is also to be judged of in the same way.   The question is not whether the machines constructed by the defendants have anything in common with the present patents, but whether they employ the same combination of elements in substantially the same way to effect the same result.   If they do, they infringe; but otherwise certainly not.   The mistake of the plaintiff is in supposing that the adoption of any element of the patents which she represents constitutes an infringement, however old such element may be, and without regard to the combination in which it figures.   The defendants make use, for instance, of a feeder, and they also employ a stone slab as a deflector plate near the end of the chute. But it by no means follows that either of these is an infringing use—both of these devices being old—simply because they are found in the patents in suit.   No doubt, in general effect, a rocking or rotary feed, such as those in the defendants' machine, is the equivalent of the reciprocating vertical feed employed by the plaintiff, however much it may improve thereon.   But a reciprocating feed actuated by an eccentric in exactly the same fashion as now is an element of the Thomas ore separator, patented in 1878, and was adopted again by express reference in that of 1888, so that when the earlier of these ran out, as it did in 1895, as a device it was open to every one, and the defendants were at perfect liberty to make use of it as they have.   The same is true with regard to the slab of slate or stone, of which much seems to have been made.   Assuming that the use of a mere material could be so monopolized, which is at least debatable (Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683; Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852), it is specified as appropriate in such a structure in both of the Thomas patents, which have just been alluded to; so that, if ever otherwise, it certainly now is free.   The adjustable opening at the foot of the lower chute stands in exactly the same situation.   Not only is it an element in the two Thomases of 1875 and 1878, but in the two Zeiglers of 1883 and 1888, and the Phillips & Evans of 1889, as well.   As to both the patents in suit, therefore, these three things

were all old, and no just complaint can be made with regard to the use of either of them as single, independent features in the defendants' machines.

But if the defendants cannot be held for the use of individual features singly, they cannot be held at all, for it will hardly be contended that either patent has been followed as a whole. The invention covered by the first (1888) is embodied in the following single claim:

"In a coal separator, a combination of a supporting frame; an upper chute hinged to the said frame so as to swing in a vertical plane, and provided with a pulley placed externally on the side thereof; a lever and link adapted to raise or lower said chute; a lower chute, situated under the upper chute, and hinged thereto; and a chain passing over said pulley, having one end secured to the one part of the supporting frame below the plane of said pulley, and the other end attached to the free end of the said lower chute, substantially as described, and for the purpose specified."

All that is thus set forth must, of course, be present to make out infringement, the combination specified having to be taken as a whole. This constitutes the invention protected by the patent as stated by its author in the required legal form, regardless of what may precede it in the specifications, and by it he must, therefore, stand or fall. 22 Am. & Eng. Enc. of Law, 361. But the defendants' machines, as matter of fact, have nothing in common with what is here given except the upper and lower chutes and the supporting frame, elements so old that of themselves they afford nothing patentable. No doubt, with these, the defendants make use of the same general idea as that adopted by the patentee, the different weight and action of coal and slate descending over differently inclined surfaces being relied upon to separate them, as explained above. But an idea or result is not patentable (O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601), but only the concrete means devised for effecting it; and, taking this as it stands in the patent, the two are wide apart.

Neither has infringement been shown as to either of the four claims of the second (1893) patent, which are as follows:

"(1) In a slate picker or separating machine, the combination of the inclined screen, B, chute, F, the vertically reciprocating feeder, G, at the lower edge of said chute, the inclined platform, H, the upper inclined plane, I, separated from the lower plane, J,[1] by a transverse dust opening, h, the lower plane, J, having a less incline than the upper plane, I, the coal discharge, and the slate discharge opening between said coal discharge and the lower plane, J, substantially as specified."

Disposing of this claim before passing on to the next, it is clear that the defendants have no inclined screen such as is here spoken of, nor any platform, H, immediately below the reciprocating feeder, nor any transverse dust opening between the upper and lower planes of the lower separating chute. They may employ a feeder as well as some other features, and the feeder, whether reciprocating or rotary, may be an important and effective part of both plaintiff's and defendants' machines, but that is not enough. They must be shown to have taken the substance of the whole combination, and that can certainly not be said.

[1] I have made the necessary correction at this point in the terms and lettering, so as to have the claim correspond with the diagram and be intelligible.

"(2) In a slate picker or separating machine, the combination with the main supporting frame A, its inclined screen, the chute, and the feeder, of the frame K, supported at an inclined position in the frame A, an upper inclined plane supported in the upper portion of the frame K, a second plane having a less incline supported in said frame below the upper plane, a transverse dust opening, h, between said planes, means for adjusting the inclination of the frame K, and thereby the common adjustment of both said planes, and means for effecting the independent adjustment of the lower plane, substantially as specified."

Much the same may be said of this claim as of the first. An inclined screen and a transverse dust opening between the two planes, I and J, are both an essential part of it, and neither are found in the defendants' machines. Furthermore, the latter have no independent adjustment of the second or lower plane, known with them as the "slate deflector." The whole incline which follows the discharge feeder, although made of two parts, is rigidly set in a single frame, the deflector plate at the end being fastened at an angle with the plane above, and both, when moved, being moved as one.

"(3) In a slate picker or separating machine, the combination with the supporting frame A, the inclined vibratory screen, B, supported in the upper portion of said frame, the cam shaft, D, and the cams, C, thereon, for effecting the vibration of said screen, and the chute, F, below said screen, of the vertically reciprocating feeder, G, working adjacent to the lower edge of said chute, the driving shaft having the eccentrics, the connecting rods operated by said eccentrics and connected to said feeder, and a series of inclined separating planes below said feeder, substantially as specified."

Here also the inclined screen is made a feature, as well as the cam and cam shaft, which gives it its vibratory motion, no part of which has been appropriated by the defendants. There can be no question as to the screen being a material element, or that, in its absence, infringement cannot be successfully charged, for all that there is to the claim outside of it is a reciprocating feeder eccentrically operated and the inclined supporting planes below, both of which are found in exactly the same combination in the Thomas ore separator of 1878, already alluded to.

"(4) In a slate picker or separating machine, the combination with the inclined pivoted frame K, having the upper stationary plane, I, and the lower plane, J, separated from the upper plane by a transverse dust opening, h, of the lever, P, connected by rods, p, p', with the lower portion of said frame, and providing means for the adjustment of its inclination, the eccentric bar upon which the lower portion of the lower plane, J, is supported, and the ratchet and pawl for holding said bar, substantially as specified."

The screen is absent from this claim, but the transverse dust opening figures in it the same as in the first and second, and there is nothing to correspond with this, as we have seen, in the defendants' machines. Neither have they any inclined pivoted frame, K, with means for adjusting its inclination, employing, as they do, a single frame, which is rigid. They do provide for adjusting the lower chute, including the deflector plate, which is moved as a whole by means of a bell crank; but, even assuming that there was any equivalency in this part of the two machines, which is certainly open to dispute, they are so essentially different in other respects that, as a whole, infringement cannot be maintained.

The same result is reached if the claims, instead of being taken singly, are put together in groups. However combined, either the screen at the head from which the coal and impurities start, or the intervening dust opening between the two planes below the feeder, is present, neither of which, as we have seen, the defendants employ. Whatever similarity, therefore, there may be in other particulars, by omitting these, as they do, the defendants avoid the charge of infringement. They really effect the same result by the use of fewer elements, which is always admissible when the elements so combined are not new.

Let a decree be drawn dismissing the bill, with costs.