**KOOCHOOK CO., Inc., et al. v. BARRETT et al.**

No. 13390.

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1946.

SANBORN, Circuit Judge.

This appeal is from a judgment for the plaintiffs, Harry B. Barrett and Barrett Equipment Company, in an action to enjoin infringement by the defendants, Koochook Company, Inc., and Lempco Products, Inc., of claims 1, 2, 13 and 14 of United States Letters Patent No. 2,187,962 for a "Combination Precision Grinder and Caliper," issued to Harry B. Barrett January 23, 1940, upon an application filed October 14, 1936. The patented device of Barrett is a tool primarily designed for grinding the brake-shoes of motor vehicles. The defendant Lempco Products, Inc., makes and markets a similar tool.

The issues made by the pleadings and tried to the District Court were: (1)

---

[7] See note 4 supra.

Whether the patent claims in suit were invalid (a) for lack of invention or (b) because of anticipation; and (2) whether the defendants had infringed the claims. The court found that all of the claims in suit were valid, and that claims 1, 2 and 13 had been infringed.[1]

The questions presented on review are:

1. Is there a sufficient evidentiary basis in the record to support the findings of validity and infringement?

2. Did the District Court err in excluding evidence of the state of the art?

The vital question in this case is whether Barrett's device advanced the art sufficiently to constitute invention. The answer largely depends upon what contribution Barrett made to the art, and what the existing state of the art was at the time he made his contribution.

The tool covered by the patent in suit is intended primarily to grind the cylindrical surfaces of the brake-shoe linings of motor vehicles. A modern automobile has internal, expanding brakes consisting of cylindrical drums fastened to the wheels and complementary expanding shoes attached to the axle. The shoes are lined with suitable friction material. When the brakes are applied, the outer surfaces of the shoes engage the inner surfaces of the drums. The friction thus produced retards the motion of the wheels. For maximum braking efficiency, the shoes must be properly positioned and the curvature of their outer surfaces must correspond accurately to the curvature of the inner surfaces of the drums with which they make contact. In other words, braking efficiency is reduced if the shoes do not fit the drums. The Barrett grinder is a portable tool for radial mounting upon the shaft of an automobile axle. The tool will grind the linings of the brake-shoes attached to the axle so that the shoes will conform to the radial dimensions of their companion brake-drums. The tool has a wide range of adjustments for the grinding of all surfaces necessary to fit the shoes to the drums.

To meet the varying dimensions of axle shafts on different makes of automobiles, the Barrett grinder has a sleeve-like member or "adapter" adjustable to any type or size of axle on which the grinder is to be mounted. As described in the claims in suit, the Barrett grinder consists of a tubular barrel or sleeve, fitting over and clamped upon the "adapter." Attached to the barrel is a frame, shiftably mounted, projecting outward in a plane tangential to the barrel. A cross-frame at the outer end of the frame supports a motor-driven rotary disk-type grinder. The grinding element is so mounted on the cross-frame as to provide a wide range of adjustments. Figuratively, the Barrett grinder consists of a mechanical arm attached to a hub which moves around the axle or shaft of an automobile. The arm has a mechanical hand which holds an electric disk-type grinder in position to grind the cylindrical surface of a brake-shoe lining. The mechanical hand can be adjusted to hold the disk at any angle within an arc of ninety degrees.

The accused Lempco grinding tool is substantially similar to the tool of Barrett. There are only slight structural and functional differences. The Lempco tool

[1] Claim 1 is similar to claim 2 and reads as follows:

"1. In a grinding-tool, in combination with a bearing, a frame mountable on the bearing for rotatory movement, and grinder-means including an abrading member mounted on the frame for travel, on rotatory movement of the frame, in a circular path concentric about the axial line of the bearing, said abrading member having a flat grinding face adjustable relatively to the frame and bearing for grinding a plurality of selected surfaces about said axial line in a range varying from a surface perpendicular to said line to a surface the tangential planes of which are parallel to said line."

Claim 13 reads as follows:

"13. In a grinding-tool, a barrel, means for mounting the barrel on a shaft for rotatory movement therearound, a frame mounted on the side of the barrel and extending laterally outwardly therefrom in a plane tangential to said barrel and being provided at its outer extremity with a cross-frame having a flat face parallel to said tangential plane, an electric motor mounted on the cross-frame for shiftable movement along the flat face thereof, and grinder means mounted on the motor for bodily movement therewith and being drivingly connected thereto, said grinding means including a flat face-plate grinder having a shaft the axis of which lies in the same plane of the barrel axis."

has a barrel slipping over an "adjuster" on the axle shaft, an arm attached to the barrel, and a mechanical hand holding an electric rotary disk-type grinder in position to grind the cylindrical surface of a brake-shoe. The grinder can be adjusted to do any grinding necessary to fit the shoe to the drum. The accused device is the substantial equivalent of the Barrett tool, since "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Union Paper-Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L.Ed. 935; McDonough v. Johnson-Wentworth Co., 8 Cir., 30 F.2d 375, 383, certiorari denied, 280 U. S. 572, 50 S.Ct. 28, 74 L.Ed. 624; Freeman v. Altvater, 8 Cir., 66 F.2d 506, 511.

It appears from the record that (with the possible exception of Musgrave) Barrett was the first to develop a tool with a flat-faced disk for grinding brake-shoes. Musgrave in his patent No. 2,022,819, granted December 3, 1935, upon an application filed February 10, 1931, shows a tool for grinding brake-shoes, similar in every important respect to the Barrett tool, but equipped with a cone-shaped grinding-wheel instead of a rotary disk-type grinder. At the trial, appellants attempted to show by Musgrave that in or about 1932 or 1933 he substituted for the cone-shaped grinding-wheel of his device a rotary disk-type grinder similar to that of Barrett. The court, however, excluded this evidence under a stipulation, made before trial, limiting the issues and the proof of anticipation and the state of the prior art. While some of Musgrave's evidence, still in the record, tended to show that he had developed, prior to Barrett, a disk-type grinder substantially similar to Barrett's, it is apparent that the District Court regarded that testimony as incompetent and inadmissible because of the stipulation. We have, therefore, treated this evidence as though it had all been excluded.

Barrett, on February 18, 1936, had procured a patent, No. 2,031,357, on a brake-shoe grinding tool similar to that covered by the patent in suit, except that, instead of using a rotary disk for grinding the surface of the lining, he used a cylindrical or rasp-type of grinder. The grinding element of

Barrett's first patent and the conical abrasive element shown in the patent of Musgrave were both unsatisfactory because the abrasive element gouged the brake lining.

■■ The evidence, taking that view of it most favorable to Barrett, shows that he solved the problem of providing a satisfactory tool for truing brake-shoes; that the problem at the time he entered the field with his second patent had become acute; that by 1930 the automobile industry was equipping virtually all motor vehicles with internal, expanding brakes (the change-over from the earlier contracting, external brakes having commenced in or about 1926); and that manual means for grinding and fitting the brake-shoes of the internal brakes were unsatisfactory, and "burning in" the brakes by operating the car with the brakes set was inefficient and wasteful. Barrett's contribution to the brake-shoe grinding art was a meritorious one and met with great commercial success. However, what Barrett did was to point out that substituting a rotary disk as an abrasive means would make a satisfactory brake-shoe grinding tool out of an unsatisfactory one.

There was nothing novel about the means adopted by Barrett for bringing the grinder into position to do the work which it was intended and adapted to do, or in making it adjustable. The patent to Albee No. 1,877,546, granted September 13, 1932, on an application filed November 10, 1930, showed a grinding tool pivoted upon a shaft and fully as adjustable as the Barrett device. It is true that Albee's device was a valve-grinder and not a brake-shoe grinder and that it did not use the flat face of the grinding wheel. The Albee patent did show, however, the way for pivoting a frame to a shaft and adjustably mounting the grinding element on the frame to do the work for which the grinder was intended and adapted.

Dean Langsdorf, of the School of Engineering and Architecture of Washington University, who appeared as an expert for Barrett, testified: " * * * it is very significant to me that it was the insertion of the words 'flat-faced grinder', or something equivalent to that, in the claims of the patent in suit that induced the Patent Office to allow the Barrett patent over the Albee

reference." This testimony is supported by the action of the Patent Office upon Barrett's application. The Patent Examiner was originally of the opinion that "No invention would be involved in using the flat face of the grinding wheel of Albee or Pelstring" [Patent No. 753,911 issued March 8, 1904]. The Examiner adhered to this position until original claims 6 and 7, which finally became claims 1 and 2 of the patent in suit, were amended to state that Barrett's abrading element had "a flat grinding face."

■ Mere adjustability is ordinarily not patentable. Continental Machines, Inc. v. Grob, 8 Cir., 137 F.2d 470, 474. In view of Albee's patent, the adjustability of Barrett's device, covered by claims 1 and 2 of his patent, could not amount to an advance over the prior art. There is no evidentiary basis for finding invention in Barrett's contribution to the art unless we may attribute to inventive genius his conception that a rotary abrasive disk, old in the art, when combined with a well-known mechanical arm and hand, would make a satisfactory brake-shoe grinder.

We think that Barrett's contribution can not be held to constitute invention in the light of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U. S. 84, 62 S.Ct. 37, 86 L.Ed. 58. That case involved the Mead patent No. 1,736,544 relating to improvements in lighters for cigars and cigarettes. Mead, in effect, took the last step to perfect a cigarette and cigar lighter for use in automobiles—just as Barrett took the last step to perfect a type of tool, known to the prior art, by using in connection with it a disk-type grinder, old in the art. The Supreme Court, while conceding that the functions performed by Mead's combination were new and useful, ruled that they did not constitute an invention or discovery. The court said (pages 90–92 of 314 U. S., pp. 40, 41 of 62 S.Ct.):

"We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76.

Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. Co., 107 U.S. 649, 17 Otto 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L. Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 2 Otto 347, 356, 357, 23 L.Ed. 719. The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. Phillips v. Detroit, supra; Concrete Appliances Co. v. Gomery, supra [269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222]; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra [282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278]; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., supra [294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005]; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain.

"Tested by that principle Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8, authorizes Congress to reward. He merely incorporated the well-known thermostat into the old 'wireless' lighter to produce a more efficient, useful and convenient article. Cf.

Electric Cable Joint Co. v. Brooklyn Edison Co., supra. A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' (Blake v. San Francisco, 113 U.S. 679, 683, 5 S.Ct. 692, 694, 28 L.Ed. 1070), even though the new result had not before been contemplated. Pennsylvania R. R. Co. v. Locomotive Engine Safety Truck Co., 110 U.S. 490, 494, 4 S.Ct. 220, 222, 28 L.Ed. 222, and cases cited. Certainly, the use of a thermostat to break a circuit in a 'wireless' cigar lighter is analogous to or the same in character as the use of such a device in electric heaters, toasters, or irons, whatever may be the difference in detail of design. Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art."

See and compare, also, Freeman v. Altvater, 8 Cir., 138 F.2d 854, 861; Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502; Picard v. United Aircraft Corporation, 2 Cir., 128 F.2d 632, 636.

We are of the opinion that the substitution by Barrett of a rotary disk-type grinder for a cylindrical grinder or a grinder of the cone or rasp type used in tools similar to Barrett's did not rise to the dignity of invention, and is to be attributed to the mechanical skill of one versed in the art. Surely a skilled mechanic ordinarily should be capable of selecting from an assortment of the abrasive tools of his trade the one best fitted to do the work at hand.

Since we think that the claims in suit are invalid for lack of invention, it is not necessary to consider whether the exclusion of evidence relating to the state of the art was reversible error; but compare, Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co., 8 Cir., 146 F.2d 165, 168, and Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F. 2d 497, 502.

We conclude that, in view of the prior art disclosed in the record, the findings of invention and validity are not sustained by the evidence and are "clearly erroneous." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The judgment appealed from is reversed with directions to enter a judgment dismissing the complaint.